UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is plaintiff Jaime Garcia's ("Plaintiff") Motion to Remand. (Docket No. 12 ("Remand").) Defendants Shasta Beverages Inc., National Beverage Corporation, and BevPak ("Defendants") have filed an Opposition, and Plaintiff filed a Reply. (Docket Nos. 14 ("Opp.") and 18 ("Reply").) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds these matters appropriate for decision without oral argument. The hearing calendared for February 3, 2020 was vacated, and the matter taken off calendar. For the reasons discussed below, the Court grants Plaintiff's Motion to Remand.

**I.  Background**

On October 22, 2019, Plaintiff filed a wage and hour class action Complaint against Defendants. (Docket No. 1, Ex. B ("Compl.").) Plaintiff asserts ten claims for relief against Defendants on behalf of himself and other class members for: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final wages that were not timely paid, (6) wages that were not timely paid during employment, (7) non-compliant wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed business expenses, and (10) violation of California Business & Professions Code § 17200. (Id. ¶¶ 49-119.) On December 2, 2019, Defendants removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"). (Docket No. 1 ("Removal").) On January 2, 2020, Plaintiff filed a Motion to Remand.

**II.  Legal Standard**

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by Congress and the Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. Id. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Federal subject matter jurisdiction may be based on diversity of citizenship pursuant to CAFA. See 28 U.S.C. § 1332(d)(2). In doing so, it must be established that at least one plaintiff and one defendant are citizens of different states, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. Id. "[T]he burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 82 (2014)). However, "[i]f the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id. at 788-89 (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015)). "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type-evidence related to the amount in controversy at the time of removal.'" Id. at 793 (quoting Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." Id. at 1199.

### III. Analysis

Initially, Defendants alleged that the amount in controversy is $9,402,779.60 based on Plaintiff's claims for (1) waiting time penalties, (2) wage statement violations, and (3) meal and rest period violations. (Removal ¶¶16-19.) Defendants also alleged that if Plaintiff seeks attorney's fees of only 10%, then the new total comes to $10,343,057.60. (Id. at ¶19.) Defendants did not submit any supporting declarations with the Notice of Removal. These estimates have changed significantly in Defendants' Opposition brief, which now alleges that the amount in controversy could reach at least $5,180,839.20. (Opp. at 18.) Defendants now assume that attorneys fees would amount to 20% of Plaintiff's potential damages, and Defendants have also presented new calculations based on Plaintiff's unpaid overtime wages claim, which were not in the Notice of Removal. (Id. at 13-14, 17-18.) The Opposition is accompanied by a declaration from Karen J. Leigh ("Leigh"), a Litigation Coordinator for Defendant National Beverage Corp., who states in relevant part:

  a.  By virtue of my position, I have access to certain payroll and personnel records of SHASTA BEVERAGE, including those of Plaintiff Jaime Garcia ("Plaintiff"), which have been maintained in the ordinary course of

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

       business. I have reviewed the files necessary to provide the information set forth in this declaration.

b.     Between October 22, 2015 and October 22, 2019, Defendants employed approximately 374 individual non-exempt employees in the state of California. This number was determined by accounting for each unique individual listed within the California Employee Roster spreadsheet during the relevant time period.

c.     Between October 22, 2015 and October 22, 2019, approximately 184 non-exempt employees of Defendants, who worked at SHASTA BEVERAGE, have either left their employment or have had their employment terminated.

d.     Based on SHASTA BEVERAGE's payroll data, the minimum hourly rate for its California non-exempt employees is $18.75 per hour. This conservative figure reflects the minimum hourly rate paid to each non-exempt employee, though some of the class were paid more than $18.75 per hour.

e.     Between October 22, 2015 and October 22, 2019, the approximately 374 non-exempt employees who worked for Defendants, worked a total of approximately 208 workweeks during this period.

f.     SHASTA BEVERAGE hourly workers are paid weekly, thus there are 52 pay periods per year.

(Opp. at Leigh Decl. ¶¶2, 5, 10-12, 14.)

       Plaintiff's Motion to Remand contends that Defendants have failed to sustain their burden in establishing that CAFA's $5,000,000 amount-in-controversy requirement is satisfied. Specifically, Plaintiff argues that Defendants rely on unreasonable and unsupported assumptions in their Notice of Removal and Opposition, including with respect to the alleged violation rates. For the reasons discussed below, the Court agrees with Plaintiff. Defendants have failed to present the necessary information to establish that Defendants' assumed violation rates are reasonable. Compare Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) (affirming grant of remand and reasoning, "[t]he only evidence the defendants proffer to support their calculation of the amount in controversy is a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages. Beyond this, the defendants rely on speculative and self-serving assumptions about key unknown

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

variables. The district court correctly concluded that Archstone's evidence was insufficient to support removal jurisdiction under CAFA.").

### A. Waiting Time Penalties

In California, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately," while an employee who quits is entitled to such earned and unpaid wages within seventy-two (72) hours of his or her resignation. Cal. Lab. Code §§ 201(a), 202(a). Further, if an employer "willfully fails to pay," in accordance with California Labor Code requirements, "any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). Plaintiff alleges in the complaint that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Compl. ¶86.) "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Id. ¶89 (emphasis added).)

Defendants assume that Plaintiff and class members "seek damages for the full 30-day waiting time penalty period for each putative class member." (Removal ¶16.) Defendants allege that at least 50 putative class members are no longer employed by Defendants, their average wage was $21.59 per hour, and they worked five days a week. (Id.) Defendant therefore calculates the potential waiting time penalties to be $259,080.00. (Id.) This increases in Defendants' Opposition to $828,000. (Opp. at 16.) Defendants again assume a 100% violation rate and argue they "may reasonably assume that 30 day maximum waiting time penalties apply to Plaintiff's claims" based on the allegations in Plaintiff's Complaint. (Id.) Defendants now allege their "records show that 184 putative class members [rather than 50] are no longer employed" and their average minimum wage is $18.75 per hour. (Id.)

These calculations misstate the Complaint's allegations. The Complaint does not state that every class member whose employment has ended was entitled to wages owed upon termination which they did not receive. Based on the Complaint's plain language, Plaintiff does not appear to be alleging that every class member whose employment with Defendants has ended is owed waiting time penalties. The Complaint also states that Plaintiff and other class members are entitled to "up to a thirty (30) day maximum" statutory penalty, such that there is a clear possibility that only a small handful of class members will be entitled to 30 days worth of penalties. For these reasons, Defendants' assumed 100% violation rate is not reasonable.

In addition, Defendants did not provide any factual basis for their "reasonable interpretation" that "the maximum statutory penalty—thirty (30) days' wages—applies to all Putative Class Members that were discharged or resigned." See Garibay, 539 Fed. Appx. at 764 (finding that the defendant improperly

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

"assume[d] that each employee would be entitled to the maximum statutory penalty, but provide[d] no evidence supporting that assertion."). The only evidence Defendants present to support their assumption is the Leigh declaration, which states the (1) number of class members who have left Defendants' employment during the relevant time period, and (2) hourly rate provided to class members. Nowhere does the declaration address the possible rate of waiting time penalties, or what facts Defendants' assumption of a maximum waiting time penalty for all class members is based on. Compare Marshall v. Faneuil, Inc., 2018 U.S. Dist. LEXIS 133007, *7 (E.D. Cal. Aug. 6, 2018) (granting motion to remand and reasoning, "[b]ecause defendants have not supported this calculation by a preponderance of the evidence but point merely to the complaint's allegations, the court rejects defendants' assumption.").

Although Defendants "may draw reasonable inferences from the complaint and from the evidence submitted in connection with the removal of the complaint and the motion to remand, [Defendants are] not permitted to pull violation rates out of thin air." Sanchez v. WaveDivision Holdings, LLC, 18-CV-02439, 2018 WL 3343589, at *1 (N.D. Cal. July 9, 2018) (remanding case and finding defendant's declaration was "missing the most important information for estimating the amount in controversy: the likely violation rates"); see also Contreras v. J.R. Simplot Co., 17-CV-00585, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017) (granting motion to remand finding a "defendant's amount in controversy calculation is unjustified where the only evidence the defendant provides is a declaration by [its] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages") (citation and quotations omitted). The Ninth Circuit has clearly held that "[b]ecause a 'pattern and practice' of doing something does not necessarily mean always doing something, we reasoned, the defendant's assumed violation rate of 100% may or may not have been valid." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (citation and quotations omitted); see also Cavada v. Inter-Cont'l Hotels Grp., Inc., 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019). Accordingly, Defendants have failed to demonstrate by a preponderance of the evidence the amount in controversy for waiting period penalties for purposes of removal.

### B. Wage Statement Violations

California employers must provide their employees "accurate itemized statement[s] in writing showing [among other things,] gross wages earned . . . [and] all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Id. § 226(e)(1). Plaintiff alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements. The deficiencies include, but are not limited to: the failure to include the total number of hours worked by Plaintiff and the other class members." (Compl. ¶98.)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

Defendants assume a 100% violation rate—that every class member suffered a violation during every pay period they worked. (Removal ¶17.) Defendants allege the potential damages for wage statement violations is $498,200. (Id.) This amount is based on Defendants' assumption that there were "approximately 188 hourly workers in the state of California at any given time" and they worked 27 pay periods, such that each individual would be entitled to $2,650 in penalties. (Id.) In the Opposition, Defendants' estimated damages increases significantly to $948,400. (Opp. at 16.) Defendants still assume a 100% violation rate, arguing that "because Plaintiff alleges Defendants had a 'pattern and practice' of not providing Plaintiff and the putative class members meal and rest breaks, then Defendants may reasonably assume all wage statements are incorrect and violative of Labor Code section 226." (Id.) Defendants now allege there were 53 pay periods during the relevant time period and approximately 184 hourly workers who received wage statements. (Id. at 17.)

Here again Defendants' calculations misstate the Complaint's allegations. The Complaint does not state that every class member did not receive compliant wage statements. Nor does the Complaint suggest that every class member was denied a compliant wage statement for every pay period she worked. The Complaint's language clearly indicates a possibility that only a small handful of class members will be able to show they were denied accurate wage statements. For these reasons, Defendants' assumed 100% violation rates are not reasonable. Compare Calderon v. BKB Constr, LP, No. 17-cv-01255-DMR, 2017 WL 2618094, at *7 (N.D. Cal. June 16, 2017) (finding that an "allegation in the complaint that Plaintiff and the other class members are entitled to receive the greater of their actual damages or 'an aggregate penalty not exceeding [$4,000.00] per employee' does not entitle Defendant to blindly assume that Plaintiff is entitled to a maximum statutory penalty of $4,000.00").

Additionally, Defendants provide no factual basis to demonstrate that they have reasonably assumed a 100% violation rate. The Leigh declaration does not explain the sudden increase from 27 to 53 pay periods relied on in Defendants' new calculation. Nor does it explain why 184 instead of 188 hourly employees is the appropriate number for the calculation. Moreover, the Leigh declaration "is bereft of any details necessary to support this assumption including, but not limited to, how many pay periods Plaintiff worked during his employment, and whether the wage statement format changed over time." Id. at *7; compare Raya v. Amazon.com, LLC, No. C 15-2005 MMC, 2015 WL 4035096, at *2 (N.D. Cal. June 30, 2015) (finding defendant's wage statement calculation was reasonable where defendant submitted undisputed evidence of the number of pay periods worked by the putative class members and evidence that the wage statements were "identical in format"). Accordingly, Defendants have failed to demonstrate by a preponderance of the evidence the amount in controversy for wage statement penalties for purposes of removal.

Notably, Defendants' calculations fail to account for the $4,000 cap on penalties for each individual. See Cal. Lab. Code § 226(e)(1) ("not to exceed an aggregate penalty of four thousand dollars ($4,000)" per employee). Thus, even if this Court were to conclude that Defendants' 100% violation rate is based on reasonable assumptions, the total damages for waiting time penalties would only amount

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

to $736,000 ($4,000 x 184 employees). (Reply at 8.) Plaintiffs argue this would bring Defendant's total amount in controversy to below $5 million. (Id. at n.1.)

### C. Meal and Rest Period Violations

California law prohibits employers from requiring employees to work during a required meal or rest period, and the employer must pay to the employee an additional hour of pay at the employee's regular rate of pay for each day that the period is not provided. Cal. Lab. Code §§ 226.7(b)-(c), 1197(b)-(c). Plaintiff alleges that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This pattern and practice involved, inter alia, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." (Compl. ¶27.) Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members all required rest and meal periods during the relevant time period." (Id. at ¶29.)

Defendants assume a 100% violation rate—that putative class members "each seek one hour of pay for a meal period and one hour of pay for a rest period for each day of the work week for each year of employment within the relevant time period." (Removal ¶18 (emphasis added).) Defendant assumes that all putative class members worked five-day work weeks and "were regularly scheduled for eight hour workdays." (Id.) Based on these assumptions, Defendants allege that 188 non-exempt hourly employees working at an hourly rate of $21.59 per hour during the relevant time period would be entitled to a total of $4,322,749.80 in potential meal period damages. (Id.) Defendants allege the rest period damages would be the same amount, such that these two claims would account for $8,645,499.60 in total potential damages. (Id.) In the Opposition, Defendant still argues that its "assumption of a 100% violation rate for the putative class is reasonable" based on the Complaint's language. (Opp. at 11.) Defendant acknowledges, however, that other district courts have found an assumed 20%, 25%, or 50% violation rate is reasonable for meal/rest period claims. (Id. at 12 (collecting cases).) Defendant therefore argues that the potential damages for Plaintiff's meal period claim ranges from $3,578,250 (100% violation rate) to $715,650 (20% violation rate). (Id. at 12-13.) Defendant alleges the calculations for Plaintiff's rest period claim are the same. (Id. at 13.)

The Court finds that a 100% violation rate is not supported by the plain language of the Complaint, and Defendants have not offered any facts to show this assumption is reasonable. Compare Armstrong v. Ruan Transport. Co., 16-VAP-1143, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25. 2016) (finding no basis for the court to assume the plaintiff meant the defendant failed to provide each and every legally required meal and rest period to each class member based on an allegation that the defendant "failed to provide all legally required unpaid, off-duty meal periods and . . . rest periods"); Ibarra, 775 F.3d at 1199 ("While it is true that the complaint alleges that [the defendant] maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, that does not mean that such violations occurred in each and every shift."). Defendants' new calculations based on a 20% violation rate also lack any factual

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

support to show this assumption is reasonable. The Leigh declaration does not address the likely average rate of meal period and rest period violations. See Contreras, 2017 WL 4457228, at *3; Garibay, 539 Fed. Appx. at 764 ("As the district court correctly explained, Archstone failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than 'one missed rest period per paycheck or one missed rest period per month.'"); Farley v. Dolgen California LLC, 16-CV-02501, 2017 WL 3406096, at *3 (E.D. Cal. Aug. 9, 2017) ("Without corroborating documents, Cheesman's declaration, on which defendant heavily relies, is speculative and self-serving."). Defendants have failed to demonstrate by a preponderance of the evidence the amount in controversy for meal and rest period penalties for purposes of removal.

### D. Overtime Wage Violations

Under California law, "[e]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). Plaintiff alleges Defendants engaged in a "pattern and practice" of failing to pay employees overtime wages. (Compl. ¶27.) Defendants did not present any calculations for this claim in the Notice of Removal. In the Opposition, Defendants argue that an assumed 20% or 40% violation rate would be reasonable and allege that Plaintiff's unpaid overtime claim ranges from approximately $1,073,665.84 to $2,147,331.68. (Opp. at 13-15.)

Defendants' calculations are flawed because they misstate the claims in Plaintiff's complaint and lack any adequate factual support. The allegation that Defendants failed to provide overtime wages pursuant to a "pattern and practice" could also mean: (1) Defendants failed to compensate one class member for one hour of overtime pay once per year, (2) Defendants failed to compensate a small group of class members for one hour of overtime pay once per month, or (3) Defendants failed to compensate half of the class members for one hour of overtime pay every week. In each of these scenarios, Defendants failed to pay overtime wages for "all overtime hours worked." Thus, there is no logical basis for the Court to assume Plaintiff means Defendants failed to pay overtime wages for every single class member at a rate of one hour for each week worked.

Moreover, Defendants did not present sufficient factual support for their calculations. The only evidence Defendants present is the Leigh declaration, which states the (1) number of class members, (2) number of workweeks worked, and (3) wages provided for the class members. Nowhere does the declaration address the possible rate of overtime wage violations, or what Defendants' assumption that each putative class member worked an hour of unpaid overtime every single week during the relevant period is based on. Compare Rutledge v. Healthport Technologies, LLC, 16-CV-06920, 2017 WL 728375, at *1 (N.D. Cal. Feb. 24, 2017) (granting motion to remand and finding "the declaration did not include any information relevant to the potential violation rates for the claims in the complaint, such as the frequency of shifts of different lengths"); Nolan v. Kayo Oil Co., 11-MEJ-00707, 2011 WL 2650973, at *4 (N.D. Cal. July 6, 2011) ("Simply assuming that every employee . . . worked at least one hour of

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10222 PA (AFMx) | Date | February 5, 2020 |
|---|---|---|---|
| Title | Jaime Garcia v. Shasta Beverages Inc et al. | | |

overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden."). Defendants have failed to meet their burden of demonstrating the amount in controversy based on alleged unpaid overtime wages.

### E. Attorney's Fees

Plaintiff seeks "an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs." (Compl. ¶119.) Defendant alleges that "[e]ven assuming Plaintiff seeks attorneys' fees of only 10% of the estimated amount in controversy, the new total comes to $10,343,057.60." (Removal ¶19.) In the Opposition, Defendant argues that "a reasonable estimate of attorney's fees is $863,473.20, which accounts for 20% of Plaintiff's potential damages." (Opp. at 17-18.) Defendants cite a district court case for support but make no attempt to analogize the facts or circumstances of that case to this one. Without more, this does not support Defendant's allegations as to the amount in controversy. See, e.g., Serran v. Pac. Coast Feather Cushion Co., No. CV 17-4414-DMG (JEMx), 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017) ("Defendants attempt to satisfy their burden by citing cases that supposedly had 'allegations similar to this one' . . . [but] Defendants do not compare the allegations and circumstances of those cases with those of the instant matter. Thus, Defendants' citation to these cases does not satisfy their burden of showing the amount in controversy through evidence and argument.") (citation omitted).

Moreover, Defendants have failed to meet their evidentiary burden regarding attorneys' fees for purposes of removal because Defendant's calculations of the class recovery are not adequately supported. See, e.g., Garibay, 539 F. App'x at 764 (defendant's reliance on 25% benchmark failed because it had "not established by a preponderance of the evidence that the underlying amount upon which those fees would be based [was] at least $4 million, as would be required to meet the $5 million minimum"); Armstrong, 2016 WL 6267931, at *7 ("Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded."); Campbell v. Vitran Express, Inc., 10-CV-04442, 2010 WL 3971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

### Conclusion

Defendants have failed to satisfy the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000 as required for federal jurisdiction under CAFA. The Court therefore grants Plaintiff's Motion to Remand. This action is hereby remanded to the Superior Court of California, County of Los Angeles, case number 19STCV37651, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.